**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JEFFREY HARRIS, Derivatively On Behalf of CITIGROUP, INC., | Case No. 07-cv-9841 (SHS) |
| Plaintiff, | |
| vs. | |
| CHARLES PRINCE, ET AL., | |
| Defendants, | |
| -and- | |
| CITIGROUP, INC., a Delaware corporation, | |
| Nominal Defendant. | |
| GARY CINOTTO, Derivatively On Behalf of CITIGROUP, INC., | Case No. 07-cv-9900 (SHS) |
| Plaintiff, | |
| vs. | |
| CHARLES PRINCE, ET AL., | |
| Defendants, | |
| -and- | |
| CITIGROUP, INC., a Delaware corporation, | |
| Nominal Defendant. | |
| BENJAMIN NATHANSON, Derivatively On Behalf of CITIGROUP, INC., | Case No. 07-cv-10333 (SHS) |
| Plaintiff, | |
| vs. | |
| CHARLES PRINCE, ET AL., | |
| Defendants, | |
| -and- | |
| CITIGROUP, INC., a Delaware corporation, | |
| Nominal Defendant. | |

| | |
|---|---|
| SAM COHEN, Derivatively On Behalf of CITIGROUP, INC., | : Case No. 07-cv-10344 (SHS) |
| Plaintiff, | : |
| vs. | : |
| CITIGROUP, INC., ET AL., | : |
| Defendants. | : |
| WALTER E. RYAN, JR., derivatively on behalf of CITIGROUP, INC., | : Case No. 07-cv-11581 (SHS) |
| Plaintiff, | : |
| vs. | : |
| CHARLES PRINCE, ET AL., | : |
| Defendants, | : |
| -and- | : |
| CITIGROUP, INC., a Delaware Corporation, | : |
| Nominal Defendant. | : |

------------------------------------------------------------X

**PLAINTIFF JEFFREY HARRIS' MEMORANDUM IN SUPPORT OF CONSOLIDATION AND IN OPPOSITION TO PLAINTIFFS CINOTTO, NATHANSON, COHEN AND RYAN'S <u>MOTIONS APPOINTING A LEADERSHIP STRUCTURE</u>**

I.    **INTRODUCTION**

All of the Motions for Consolidation and for a Leadership Structure make plain that the application of plaintiff Jeffrey Harris ("Harris") for Lead Plaintiff and Lead Counsel is the superior choice.  Plaintiff Harris and plaintiffs Gary Cinotto ("Cinotto"), Benjamin Nathanson ("Nathanson"), Sam Cohen ("Cohen") and Walter E. Ryan ("Ryan") (collectively with Harris known as "Plaintiffs") have established:

(i)    plaintiff Harris' complaint was the first-filed;

(ii)    plaintiff Harris is uniquely qualified to lead this action, being a partner in a prestigious law firm and is experienced in overseeing a team of lawyers actively litigating cases;

(iii)    plaintiff Harris has been an owner of Citigroup, Inc. ("Citigroup" or the "Company") stock since in or about 2002 and desires to actively litigate the action he has filed;

(iv)    plaintiff Harris' complaint is the superior pleading that has not been improved upon, despite the later filings of four complaints;

(v)    plaintiff Harris is the only plaintiff who has submitted a declaration in support of his application for Lead Plaintiff and Lead Counsel;

(vi)    plaintiff Harris' counsel, Robbins Umeda & Fink, LLP ("RUF") and the Law Offices of Thomas G. Amon (the "Amon Firm") are highly qualified counsel and will ensure that the interests of Citigroup shareholders are adequately represented;

(vii)    RUF and the Amon Firm have been appointed numerous times as Lead or Co-Lead Counsel by the federal and state courts of New York state; and

(viii)    The efforts of RUF and the Amon Firm have resulted in groundbreaking corporate governance reforms and monetary recoveries for shareholders and companies alike in a number of previous derivative actions.

Plaintiff Harris opposes the leadership structures proposed individually by plaintiffs Cinotto, Nathanson, Cohen and Ryan and believes his proposed leadership structure is more than adequate to lead the litigation of the derivative actions.  The other Plaintiffs have not provided any reason why the leadership structure requested by plaintiff Harris, the first-filing plaintiff,

should not be respected. Accordingly, plaintiff Harris requests that the Court deny the leadership structures proposed by plaintiffs Cinotto, Nathanson, Cohen and Ryan, and instead appoint Harris as Lead Plaintiff and RUF and the Amon Firm as Co-Lead Counsel for Plaintiffs.

## II.    MOTIONS FOR LEAD PLAINTIFF AND COUNSEL

Plaintiff Harris filed the first of five related shareholder derivative actions currently pending in this Court on behalf of Citigroup (These five actions will be collectively referred to as the "Derivative Actions."). The four subsequent actions were filed by plaintiff Cinotto, plaintiff Nathanson, plaintiff Cohen, and plaintiff Ryan, respectively.

All Plaintiffs agree that the Derivative Actions should be consolidated. Plaintiffs do not agree, however, on the most appropriate structure to lead this litigation. Plaintiff Harris moved to appoint himself Lead Plaintiff and RUF and Amon Firm as Co-Lead Counsel. *See* Memorandum in Support of Plaintiff Jeffrey Harris' Motion to Consolidate the Related Shareholder Derivative Actions and Appoint Lead Counsel for Plaintiffs ("Harris Mem."). The other Plaintiffs filed their own individual motions to consolidate and appoint a leadership structure: (i) plaintiff Nathanson moved to appoint himself Lead Plaintiff, appoint Landskroner Grieco Madden, Ltd. ("Landskroner Firm") as Lead Counsel and the Amon Firm as Liaison Counsel; (ii) plaintiff Cinotto moved to appoint the law firm of Johnson Bottini, LLP ("Johnson Bottini") and the Amon Firm as Liaison Counsel and himself as Lead Plaintiff; (iii) plaintiff Cohen moved to appoint the law firm of Brower & Piven, APC ("Brower Piven") and himself as Lead Plaintiff; and (iv) plaintiff Ryan moved to appoint himself Lead Plaintiff and appoint Krislov & Associates, Ltd ("Krislov & Associates") as Lead Counsel and Farqui & Farqui, LLP ("Farqui & Farqui") as Liaison Counsel.[1]

---

[1] *See* Memorandum of Law in Support of Plaintiff Benjamin Nathanson's Motion to Consolidate Related Actions and for Leadership Structure for Plaintiffs ("Nathanson Mem."); Memorandum of Points and Authorities in Support of Plaintiff Gary Cinotto's Motion to Consolidate All

**III.     THE COURT SHOULD APPOINT PLAINTIFF HARRIS AS LEAD PLAINTIFF AND RUF AND THE AMON FIRM AS CO-LEAD COUNSEL**

As plaintiff Harris pointed out in his prior motion, courts generally begin their analysis of who should lead this type of litigation with the plaintiff or plaintiffs who were first to file. *See Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (the "first-filed factor" is important when "a consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker..."); *Armstrong v. Doyle*, 20 Misc. 2d 1087, 1088-89 (N.Y. Super. Ct. 1959) (noting that in designating lead counsel in a derivative action, while ultimately making its decision on the basis of the competency and experience of the attorneys, the court should consider the "wishes of the one who first brought suit").  Here, plaintiff Harris was first to file.  (Indeed, plaintiff Harris filed his complaint before plaintiff Cinotto, a week before plaintiff Nathanson, more than a week before plaintiff Cohen and more than a month and a half before plaintiff Ryan.)   Therefore, unless the factors weigh heavily in favor of one of the other Plaintiffs, which they do not, plaintiff Harris' proposed leadership structure should be appointed.

**A.     Plaintiff Harris' First-Filed Complaint Has Not Been Improved Upon And No Other Plaintiff Can Match His Credentials for Lead Plaintiff**

Plaintiff Harris' 45-page, 117-paragraph complaint brings five causes of action against thirty defendants, details breaches of fiduciary duties, insider trading allegations and violations of federal securities laws, and seeks significant corporate governance reforms. As described below, the Harris complaint has not been improved upon despite the filings of four subsequent complaints.

Plaintiff Cohen argues that his complaint is the "most comprehensive" in the Derivative Actions, basing this contention exclusively on the fact that plaintiff Cohen purportedly acquired his Citigroup shares in 1998 and that the conduct related to the claims "may extend as far back as 2000." Cohen Mem. at 6-7.  However, the relevant period in plaintiff Cohen's complaint extends

---

Related Shareholder Derivative Actions and Appoint Lead Counsel for Plaintiffs ("Cinotto Mem."); Memorandum of Law in Support of Plaintiff Sam Cohen's Motion to Consolidate All Related Shareholder Derivative Actions and Appoint a Lead Counsel ("Cohen Mem."); and Memorandum of Law in Support of Motion to Consolidate Related Shareholder Derivative Actions and Appoint a Leadership Structure for Derivative Plaintiffs ("Ryan Mem.").

only to April 2006. Plaintiff Cohen's mere speculation that the relevant period may extend further back is not alleged in his complaint. Moreover, his other principal argument, that "Plaintiff Harris has provided no indication of when shares he owned at the time he filed his motion were purchased" and that "available evidence indicates that neither Mr. Harris nor [Plaintiff] Ryan will have standing to assert claims on behalf of Citigroup attributable to early actionable conduct" (Cohen Mem. at 6) completely ignores the declaration filed by Plaintiff Harris in support of his motion which specifically states that he owned Citigroup shares since in or about 2002. *See* Declaration of Jeffrey Harris in Support of his Motion to Consolidate All Related Shareholder Derivative Actions and Appoint a Leadership Structure for Plaintiffs ("Harris Decl."). Further, Plaintiff Harris specifically alleged that he "is and was an owner of the stock of Citigroup during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company," which is sufficient to plead standing to maintain these Derivative Actions. *See* Plaintiff Harris' Verified Shareholder Derivative Complaint, ¶82; Fed. R. Civ. P. 23.1. Glaringly missing from plaintiff Cohen's application for Lead Counsel is any declaration attesting to the affirmative factual statements made in support. Nor does he seek to be appointed lead plaintiff. Plaintiff Cohen's misleading argument does nothing to advance his case for appointing his requested leadership structure.

Similarly, plaintiff Ryan argues that his pleadings are the best. Plaintiff Ryan contends that his complaint is "not a duplicate of other filed complaints, but a product of independent research by Plaintiff's counsel." Ryan Mem. at 5-6. Yet, plaintiff Ryan's application for Lead Plaintiff and Lead Counsel does not point to any particular point of distinction or the use of this independent research that distinguishes his complaint from that of the first-filed Harris complaint. If anything, plaintiff Harris' complaint is more thorough, as it includes a federal claim for violations of §10(b) of the Securities Exchange Act. This cause of action, which is also pled by plaintiff Cohen, is missing from plaintiff Ryan's complaint. Likewise, plaintiff Ryan's complaint, with its product of independent research by counsel and its filing six weeks after the Harris complaint, also provides for the same relevant period as the Harris complaint, and did not

adopt the relevant time period cited by plaintiff Cohen. A review of plaintiff Ryan's complaint does not support his claim that his complaint is the better pleading.

Another important distinction is that plaintiff Harris is the only plaintiff to have provided a declaration attesting to his ownership of Citigroup stock, the length of his holding, and of his interest in actively overseeing the litigation. Harris Decl. at 2. Plaintiff Harris' declaration further provides his superior qualifications to serve as Lead Plaintiff. Plaintiff Harris is a partner at a prestigious law firm and an experienced litigator accustomed to the oversight of a team of lawyers actively litigating a case. *Id.* at 1-3. No other plaintiff can match these credentials nor has any even attempted.

In sum, plaintiff Harris' complaint remains the superior pleading, which supports his motion to appoint his proposed leadership structure to litigate the Derivative Actions. The other Plaintiffs have offered nothing to tip the scales in their favor over the first-filed action.

### B.     Plaintiff Harris' Proposed Co-Lead Counsel Are Highly Qualified

As plaintiff Harris demonstrated in his previous motion, RUF's efforts in shareholder derivative actions have resulted in groundbreaking corporate governance reforms and monetary recoveries for companies and shareholders alike. *See* Firm Resume of RUF, attached as Ex. B to Declaration of Thomas G. Amon in Support of Plaintiff Jeffrey Harris' Motion to Consolidate All Related Shareholder Derivative Actions and Appoint a Leadership Structure for Plaintiffs ("Amon Decl.").[2] Further, lawyers from the Amon Firm, based out of New York, have more than 110 years of combined experience representing companies, executives and shareholders in litigation and corporate transactions, recouping millions of dollars on behalf of companies and shareholders in the process. *See* Firm Resume of the Amon Firm, attached as Ex. A to the Amon

---

[2] Indeed, RUF was Co-Lead Counsel in *In re Tenet Healthcare Corp. Derivative Litigation*, Lead Case No. 01098905 (Cal. Super. Ct.-Santa Barbara), the derivative case in which plaintiff Ryan touts that his proposed liaison counsel, Faruqi & Faruqi, "secured $51.5 million in cash for the company and substantial corporate governance changes." Ryan Mem. at 8.

Decl. Nonetheless, the other Plaintiffs make numerous arguments for why their proposed lead counsel should be appointed instead of RUF and the Amon Firm.[3]

First, plaintiff Cohen makes much ado about the fact that his proposed lead counsel, Brower Piven is located in New York, arguing that the appointment of RUF and the Amon Firm as Co-Lead Counsel would create some kind of "complication" that would interfere with the vigorous prosecution of the Derivative Action. Cohen Mem. at 8-10. Again, plaintiff Cohen's statements are unfounded. As an initial matter, the fact that RUF is based in San Diego is of no meaningful consequence, as RUF has successfully litigated cases all over the country. Importantly, many judges in the Southern, Eastern and Western Districts of New York have focused on the quality and qualifications of RUF in appointing the firm as Lead or Co-Lead in the following cases:

> *In re The Bisys Group, Inc. Derivative Litigation*, No. 04-CV-04600(LAK), assigned to Judge Laura Taylor Swain, U.S. District Court, Southern District of New York;
>
> *In re Forest Laboratories, Inc. Derivative Litigation*, No. 05-CV-3489(RJH), assigned to Richard J. Holwell, U.S. District Court, Southern District of New York;
>
> *In re Bausch & Lomb Incorporated Derivative Litigation*, No. 06-CV-6298-MAT-MWP, assigned to Judge Michael A. Telesca, U.S. District Court, Western District of New York;
>
> *In re DHB Industries, Inc. Derivative Litigation*, No. CV-05-4345, assigned to Judge Joanna Seybert, U.S. District Court, Eastern District of New York; and

---

[3] While Brower Piven has experience in shareholder litigation, plaintiff Cohen's claim that his attorneys "have more experience litigating shareholder actions than the other firms that have presented their resumes" is unsupported. *See* Cohen Mem. at 8. Plaintiff Cohen also argues that Brower Piven should be appointed lead counsel because they purportedly have the resources to prosecute the Derivative Actions. *See* Cohen Mem. at 13-14. The Firm Resume provided by Brower Piven identified four lawyers in the firm. Ex. A to the Declaration of Elizabeth A. Schmid. Aside from whether or not Brower Piven in fact has sufficient resources, RUF currently has 18 lawyers and has been actively litigating shareholder derivative actions like this for years all over the country. Harris' Counsel is aware of the resources required to pursue derivative litigation and fully capable of dedicating whatever resources are necessary to fully protect the interests of Citigroup in the Derivative Actions.

*In re American International Group, Inc. Derivative Litigation*, Master File No. 04-CIV-8406 (JES), assigned to Judge John E. Sprizzo, U.S. District Court, Southern District of New York.

Brower Piven's supposed concerns are even more irrelevant here in light of the fact that plaintiff Harris' proposed Co-Lead Counsel, the Amon Firm, is based out of New York. The Amon Firm provides for an expertise that is not present in the qualifications of the counsel for plaintiffs Cohen and Ryan. As explained in the Amon Decl. in support of plaintiff Harris' motion, the Amon Firm's experience in representing publicly traded companies, and the executive officers and directors employed by such companies, in areas quite similar to the issues raised by this shareholder derivative litigation brought on behalf of Citigroup makes it uniquely situated to provide invaluable legal representation on behalf of all plaintiffs. The Amon firm has thirty years of experience in representing private and public companies in advising financial institutions in connection with secured lending transactions and securitization of mortgaged portfolios, advising financial institutions in connection with compliance with state and federal banking regulations, representing public companies and their officers and directors in compliance with their reporting obligations under the Securities Exchange Act of 1934, representing public companies in connection with their periodic reporting of officer and director compensation, and devising and implementing corporate control programs after passage of the Sarbanes-Oxley Act of 2002, including "best practices" procedures for audit and compensation committees. *See* Amon Decl. at 2-3.

Plaintiff Cohen's argument ignores that the appointment of co-lead counsel comprised of just two firms is common. Mr. Cohen cites a series of cases in an attempt to support this misguided contention, *see* Cohen Mem. at 9, but none of these cases stand for the proposition that appointing two firms as co-lead counsel is somehow undesireable. Instead, he proposes that his counsel's four-lawyer firm litigate this case as lead counsel all on its own, against the sizable resources of Citigroup.

Plaintiff Cohen further argues that Brower Piven has the "most knowledge of the applicable law" because: (1) there is supposedly no such thing as a "lead plaintiff" in derivative actions; and (2) filing the first complaint is apparently an "evil." Cohen Mem. at 10-13. First,

- 7 -

regardless of whether a lead plaintiff is necessary to prosecute a derivative action, lead plaintiffs are indeed commonly found in derivative cases in the Southern District of New York. *See In re Pfizer Inc, Derivative Sec. Litig.*, 503 F. Supp. 2d 680 (S.D.N.Y. 2007); *In re Doral Fin. Corp. Sec. Litig.*, No. 05 MDL 1706, 2006 WL 1120491 (S.D.N.Y. Apr. 27, 2006). Second, as noted above, the "first-filed factor" is important when "a consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker," *see Biondi*, 820 A.2d at 1159, and the court should consider the "wishes of the one who first brought suit," *see Armstrong*, 20 Misc. 2d at 1088-89. This hardly suggests that filing first represents an "evil." The cases cited by plaintiff Cohen in support of his contention are inapposite, as they merely stand for the unremarkable proposition that the "first-filed" factor is not the ***only*** factor the court should consider. *See* Cohen Mem. at 11. Plaintiff Cohen argues that Harris complaint's status as being first-filed should work to its disfavor, insinuating that its "rapid filing" makes its inferior. Cohen Mem. at 11-12. As detailed above, plaintiff Cohen does not make the case that his fourth-filed complaint is superior to the Harris Complaint. Further, his mistaken statements about the absence of plaintiff Harris' declaration cast substantial doubt as to the thoroughness of his analysis for the purposes of this motion.[4]

Plaintiff Ryan also claims that his counsel is best-suited to lead this litigation. Plaintiff Ryan argues that he and his counsel should be appointed to lead the litigation of the Derivative Actions because he purportedly "holds over 50,000 shares of Citi and has suffered losses to his portfolio of over $1.2 million because of the Individual Defendants' actions." Ryan Mem. at 6. As an initial matter, the case law cited by plaintiff Ryan himself demonstrates that the number of

---

[4] Plaintiff Cohen further criticizes the outstanding work of RUF and the Amon Firm in the *In re DHB Industries, Inc. Derivative Litigation*, No. CV-05-4345 (E.D.N.Y.). The criticism is ill-informed. The case was actively litigated by RUF and the Amon Firm. It has resulted in a stipulation and settlement which provides substantial and meaning corporate governance reforms. In addition, the settlement specifically provided for the resignations of the founder of DHB, David H. Brooks, from the Board of Directors of DHB and from all of the other positions held by him in DHB and of Directors Cary Chasin, Gary Nadelman and Barry Berkman from the DHB Board. *See* Supplemental Declaration of Thomas G. Amon in Further Support of Plaintiff Jeffrey Harris' Motion to Consolidate All Related Shareholder Derivative Actions and Appoint a Leadership Structure, Exs. A - B.

shares owned by a plaintiff should not affect the Court's analysis regarding who should lead the litigation. *See* Ryan Mem. at 5; *Dollens v. Zionts*, No. 01-C-5931, 2001 WL 1543524, at *4-*6 (N.D. Ill. Dec. 4, 2001) (appointing plaintiffs who owned 350 and 2,000 shares, respectively, as co-lead counsel over plaintiff who owned 66,000 shares). Further, while Plaintiff Ryan emphasizes his supposed dedication to litigating the Derivative Actions based on his stock ownership, he has not verified his complaint and did not submit a declaration testifying to his stock ownership or demonstrating his interest in prosecuting the claims on behalf of Citigroup.[5]

Plaintiff Harris' proposed Co-Lead Counsel, RUF and the Amon Firm, have extensive experience litigating derivative actions and are dedicated to prosecuting these derivative claims in the best interests of Citigroup. The other Plaintiffs have failed to provide an adequate reason why they and their respective counsel should "leap-frog" over plaintiff Harris and his counsel, who filed the first complaint in the Derivative Actions and are more than qualified to prosecute these claims.[6]

---

[5] Plaintiff Ryan also emphasizes that he has been a plaintiff in numerous other shareholder actions and is currently the plaintiff in *Ryan v. Gifford*, No. 2213-CC (Del. Ch.) a shareholder derivative action concerning stock options backdating. Ryan Mem. at 7. He even states that the case is "proceeding rapidly toward trial." *Id.* If anything, this suggests that plaintiff Ryan may be too busy with his other litigation to devote the necessary attention to the Derivative Actions. This may be evidenced in his attempt to seek favor based on the service of a document request and interrogatories, Ryan Mem. at 6, despite no showing that the requirements of Federal Rules of Civil Procedure Rule 26(d) and (f) have been satisfied.

[6] While plaintiffs Cinotto and Nathanson are certainly competent for lead plaintiff and their counsel qualified for lead counsel, they have offered no compelling reason why they should be appointed over RUF and the Amon Firm.

**IV.    CONCLUSION**

Based on the foregoing, plaintiff Harris, who was first to file a complaint in the Derivative Actions, has demonstrated that he and his counsel are more than qualified to lead the Derivative Actions.  As such, plaintiff Harris respectfully requests that the Court approve his proposed leadership structure, appointing him as Lead Plaintiff and RUF and the Amon Firm as Co-Lead Counsel.

DATED:  February 4, 2008                    Respectfully submitted,

                                            LAW OFFICES OF THOMAS G. AMON
                                            THOMAS G. AMON


                                                         *s/Thomas G. Amon*
                                             THOMAS G. AMON (TGA-1515)

                                            250 West 57th Street, Suite 1316
                                            New York, NY 10107
                                            Telephone: (212) 810-2430
                                            Facsimile:  (212) 810-2427

                                            ROBBINS UMEDA & FINK, LLP
                                            BRIAN J. ROBBINS
                                            LOUIS A. KERKHOFF
                                            SHANE P. SANDERS
                                            610 West Ash Street, Suite 1800
                                            San Diego, CA 92101
                                            Telephone: (619) 525-3990
                                            Facsimile:  (619) 525-3991

                                            Attorneys for Plaintiff

318066_2.DOC